# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOJO ENTERPRISES, INC., SWM PARTY COMPANY, LLC, CULEBRA PARTY COMPANY, LLC, DJMJ ENTERPRISES, INC., and DON E. LASSETER, JR., | Case No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| PARTY CITY HOLDINGS INC., PARTY CITY CORPORATION, AMSCAN, INC., ANAGRAM INTERNATIONAL, LLC, and XYZ CORPORATIONS 1 TO 5, | |
| Defendants. | |

## <u>COMPLAINT</u>

COME NOW, Plaintiffs Dojo Enterprises, Inc., SWM Party Company, LLC, Culebra Party Company, LLC, DJMJ Enterprises, Inc., and Don E. Lasseter, Jr. (collectively, the "Plaintiffs" or "San Antonio Franchisees") and file their Complaint against Party City Holdings Inc. ("PCHI"), Party City Corporation, Amscan, Inc. ("Amscan"), Anagram International, LLC ("Anagram"), and XYZ Corporations 1 through 5 (collectively, the "Defendants") and would respectfully show unto this Honorable Court as follows:

## <u>LOCAL CIVIL RULE 10.1 STATEMENT</u>

1.      The mailing addresses of the parties to this action are as follows:

Dojo Enterprises, Inc.
c/o Morris James, LLP
1500 Delaware Ave.
Suite 1500
Wilmington, DE 19801

SWM Party Company, LLC
c/o Morris James, LLP
1500 Delaware Ave.
Suite 1500
Wilmington, DE 19801

Culebra Party Company, LLC
c/o Morris James, LLP
1500 Delaware Ave.
Suite 1500
Wilmington, DE 19801

DJMJ Enterprises, Inc.
c/o Morris James, LLP
1500 Delaware Ave.
Suite 1500
Wilmington, DE 19801

Don Lasseter Jr.
c/o Morris James, LLP
1500 Delaware Ave.
Suite 1500
Wilmington, DE 19801

Party City Holdings Inc.
80 Grasslands Road
Elmsford, New York 10523

Party City Corporation
25 Green Pond Road
Suite 1
Rockaway, New Jersey 07866

Amscan, Inc.
100 Tice Boulevard
Woodcliff Lake, New Jersey 07677

Anagram International, LLC
7700 Anagram Drive
Eden Prairie, Minnesota 55344

/ / /

/ / /

/ / /

## PARTIES

### I.    The Plaintiffs

2.     The Plaintiffs are or were at all times relevant to this Complaint franchisees of Party City Corporation and Controlling Principals of Party City franchise stores.

3.     Plaintiff Dojo Enterprises, Inc. ("Dojo") is a Texas Corporation with its principal place of business at 5127 NW Loop 410, San Antonio, Texas 78229.

4.     On June 30, 2011, Dojo entered into a Franchise Agreement with Party City Corporation. A true and correct copy of the Dojo Franchise Agreement is attached hereto and incorporated herein as Exhibit "1."

5.     Plaintiff SWM Party Company, LLC ("SWM") is a Texas Limited Liability Company with its principal place of business at 2920 SW Military Drive, San Antonio, Texas 78224.

6.      On September 15, 2017, SWM entered into a Franchise Agreement with Party City Corporation.  A true and correct copy of the SWM Franchise Agreement is attached hereto and incorporated herein as Exhibit "2."

7.     Plaintiff Culebra Party Company, LLC ("Culebra") is a Texas Limited Liability Company with its principal place of business at 10628 Culebra Road, San Antonio, Texas 78251.

8.     On April 22, 2018, Culebra entered into a Franchise Agreement with Party City Corporation.  A true and correct copy of the Culebra Franchise Agreement is attached hereto and incorporated herein as Exhibit "3."

9.     Plaintiff DJMJ Enterprises, Inc. ("DJMJ") is a Texas Corporation with its principal place of business at 13419 San Pedro Avenue, San Antonio, Texas 78216.

10.     On July 21, 2019, DJMJ entered into a Franchise Agreement with Party City Corporation. A true and correct copy of the DJMJ Franchise Agreement is attached hereto and incorporated herein as Exhibit "4."

11.     Plaintiff Don Lasseter Jr. is an adult resident citizen of San Antonio, Texas.

12.     Mr. Lasseter is Controlling Principal under the Dojo, SWM, Culebra, and DJMJ Franchise Agreements (collectively, the "San Antonio Franchise Agreements").

## II.     <u>The Defendants</u>

**The Party City Defendants**

13.     The Party City Defendants are affiliate companies held by PCHI and named individually below. Collectively, these defendants are referred to hereafter as "The Party City Defendants" and/or "Party City."

14.     Party City sells party goods, costumes, decorations, balloons, and related items ("Party Goods") through retail and wholesale channels primarily in North America.

15.     Party City's retail operations consist of over 800 Party Goods stores operating under the names Party City and Halloween City.

16.     The majority of these retail stores were once owned by independent franchisees with Party City having approximately 400 franchise stores at one time.

17.     Today, less than 50 Party City stores are owned by franchisees, as opposed to company-owned by Party City.

18.     Party City's retail sales also include sales through its e-commerce websites including PartyCity.com and Amazon.

19.     Party City's wholesale operations wholesale Party Goods to Party City's company-owned retail stores, Party City's franchisees, Party City's e-commerce operations, as well as to

third parties such as third party e-commerce stores, third party grocery stores, third party variety stores, third party dollar stores.

20.     Party City's design and manufacturing operations design and manufacture Party Goods, which are then sold through Party City's wholesale operations.

**Defendant PCHI**

21.     Defendant PCHI is a Delaware Corporation having its principal place of business at 80 Grasslands Road, Elmsford, New York 10523. PCHI may be served with process by delivering the same to its registered agent for service of process at United Agent Group Inc., 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803.

22.     PCHI is the holding and parent company of all operational Party City entities, including Defendants Party City Corporation, Amscan, and Anagram.

**Defendant Party City Corporation**

23.     Defendant Party City Corporation ("Party City Corp." or "Franchisor") is a Delaware Corporation having its principal place of business at 25 Green Pond Road, Suite 1, Rockaway, New Jersey 07866. Party City Corp. may be served with process by delivering the same to its registered agent for service of process at United Agent Group Inc., 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803.

24.     Party City Corp. is a wholly owned subsidiary of PCHI.

25.     Party City Corp. is the named franchisor in the San Antonio Franchise Agreements.

**Defendant Amscan**

26.     Defendant Amscan is a New York Corporation having its principal place of business at 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.  Amscan may be served with

process by delivering the same to its registered agent for service of process at United Agent Group Inc., 600 Mamaroneck Avenue #400, Harrison, New York 10528.

27.     Amscan is a wholly-owned subsidiary of PCHI.

28.     Amscan is the wholesale consumer products and manufacturing division of PCHI. Amscan manufactures and wholesales the Party Goods sold in Party City stores.

29.     Party City Franchisees are required to purchase eighty percent of the Party Goods sold in their franchise stores from Amscan.

**Defendant Anagram**

30.     Defendant Anagram is a Minnesota Limited Liability Company with its principal place of business at 7700 Anagram Drive, Eden Prairie, Minnesota 55344. Anagram may be served with process by delivering the same to its registered agent for service of process at 1010 Dale Street North, Saint Paul, Minnesota 55117.

31.      Prior to its bankruptcy in January of 2023, Anagram was a wholly owned subsidiary of Party City.

32.     Anagram emerged from bankruptcy privately held by a group of its pre-bankruptcy, Party City affiliated investors.

33.     Anagram is the world's largest manufacturer and supplier of foil balloons.

34.     Anagram sells foil balloons to Party City stores owned by Party City and to Party City stores owned by Party City Franchisees. In addition, Anagram sells foil balloons via its website, various web sales venues, and to other retailers and wholesalers unrelated to the Party City affiliate companies.

/ / /

/ / /

III.    **The Fictitious Defendants**

35.    Fictitious Defendants XYZ Corporations 1-5, whose identities are unknown to Plaintiffs at this time, are corporations, individuals, and/or entities, who have acted in concert with the Party City Defendants and/or controlled the Party City Defendants at various times relevant to the allegations herein.

36.    This Complaint will be amended to include the identities of these entities once their identities are discovered and liabilities are ascertained.

## JURISDICTION

37.    Plaintiffs bring this action under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages, costs, and attorney's fees for injuries sustained by Plaintiffs because of the Defendants' violations of the Sherman Act, 15 U.S.C. § 1.

38.    The Court has jurisdiction over Plaintiffs' antitrust claims under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22. The Court has supplemental jurisdiction over the state law claims alleged in this Complaint under 28 U.S.C. § 1367(a) because these state law claims form part of the same case or controversy as the federal claims.

39.    Venue is proper in this District because the subject Franchise Agreements contain a forum-selection clause, which requires that any action brought pursuant to the agreements be brought in this District.

/ / /

/ / /

/ / /

/ / /

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**I.     Party City controls the Party Goods market and monopolizes the licensed Party Goods market.**

40.     Party City was founded in 1986 by Steve Mandela as a small company with limited capital (approximately $125,000.00) and a single retail store selling Party Goods in East Hanover, New Jersey.

41.     In order to grow the company into a national chain, Party City began selling franchise rights in retail stores in 1989.

42.     This allowed Party City to grow using the investment, capital, equity, sweat equity, and laboring oar of individual franchisees, most of whom were small family owned companies.

43.     Party City grew into a national chain on the back of work performed and investments made by its small business franchisees.

44.     By 1993 there were fifty-three (53) Party City franchise stores, giving Party City national name and brand recognition.

45.     Party City continued to grow using franchised stores, eventually having more than 400 franchise stores.

46.     As of the filing of this Complaint, Party City has over 800 retail stores. Less than fifty (50) of those are franchise stores.

47.     In 2005, Party City Corp. was purchased by private equity investment firms Berkshire Partners and Weston Presidio, through their holding company AAH Holdings Corporation ("AAH Holdings"), for approximately $360 million in cash.

48.     AAH Holdings was also the principal owner of Amscan, Holdings Inc., a manufacturer and wholesaler of Party Goods such as those sold by Party City.

49.     AAH Holdings would later become known as Party City Holdings Inc. ("PCHI").

50.     This transaction combined a leading retailer of Party Goods, Party City, with the leading designer and manufacturer of Party Goods, Amscan.

51.     In the years following its acquisition, Party City Corp. began requiring Party City franchisees, including the Plaintiffs, to purchase more and more of the Party Goods sold in their franchise stores from Amscan.

52.     As franchisees were progressively limited to purchasing from Party City-affiliated Amscan, they lost the opportunity to purchase Party Goods from other suppliers in an open, fair and competitive market.

53.     Party City used its vertical relationship with Amscan and its ability to control its franchisees under the Franchise Agreements to force anticompetitive agreements, terms, and relationships on its franchisees.

54.     Eventually, Party City franchisees were required to purchase eighty percent (80%) of the Party Goods sold in their stores from Party City-affiliated Amscan.

55.     Over time, this created a monopoly, according to former Party City CEO Steve Mandell, who stated to the New York Post in January of 2023 that the private equity firms "locked [Party City] into a large supply deal with a manufacturer they already owned [Amscan] for roughly 80% of [Party City's] supply," and "did away with competition," creating a monopoly.[1]

56.     Through a series of acquisitions following the 2005 purchase of Party City Corp., PCHI acquired the remaining Party Goods competition and removed any semblance of completion in the Party Goods market.

---

[1]     *See*     https://nypost.com/2023/01/25/party-citys-founder-blames-bankruptcy-on-private-equity-firms/, "Party City's founder blames bankruptcy on private equity firms that jacked up prices," last accessed Aug. 13, 2024.

57.     In 2006, PCHI acquired Party City competitor PA Acquisition Corp., doing business as Party America.

58.     In 2007, PCHI acquired Party City competitor Factory Card & Party Outlet.

59.     In 2007, PCHI acquired 85 percent of Party City Franchise Group.

60.     In 2008, PCHI acquired the remaining interest in Party City Franchise Group.

61.     In 2010, PCHI acquired the Party Goods division of competitor American Greetings.

62.     In 2010, PCHI acquired competitor the Christy's Group, a U.K.-based costume company.

63.     In 2011, PCHI acquired competitor Riethmuller, a German balloon and Party Goods producer.

64.     In 2011, PCHI acquired competitor Party Packagers, a Canadian retailer of Party Goods and outdoor toys.

65.     In 2012, Advent International Corp., Berkshire Partners LLC, and Weston Presidio sold a majority stake in Party City to Thomas H. Lee Partners, a private equity investment firm.

66.     As part of this transaction, the wholly-owned indirect subsidiary of Party City Holdco, Inc., PC Merger Sub, Inc. merged with and into PCHI, with PCHI being the surviving corporation. This resulted in Party City Holdco, Inc. becoming the parent company of PCHI and all its subsidiaries.

67.     In 2013, Party City acquired competitor iParty Corp., a party goods retailer. All 54 iParty stores were re-branded and re-merchandised as Party City stores.

68.     In 2013, Party City acquired competitor Party Delights, an online retailer of Party Goods, fancy dress and similar items for birthdays, christenings, and other celebrations.

69.     In 2014, Party City acquired competitor U.S. Balloon Manufacturing Co., Inc., a distributor of metallic balloons.

70.     In 2015, Party City Holdco Inc. announced an initial public offering and its shares began trading on the New York Stock Exchange under the symbol "PRTY."

71.     Also in 2015, Party City acquired competitor Accurate Custom Injection Molding Inc., a custom injection molded plastics manufacturer.

72.     In 2016, Party City acquired Festival S.A., a manufacturer of costumes and accessories.

73.     In 2017, Party City acquired an 85% stake in competitor Granmark

74.     In January of 2023, Party City filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code.

75.     Party City emerged from bankruptcy in October 2023 as a privately-held corporation in October of 2023 after relieving itself of approximately 1 billion dollars of debt.

76.     Party City's post-petition business operations are substantially similar to its pre-petition operations in that Party City continues to utilize a vertically integrated Party Goods business by operating design, manufacturing, wholesale and retail sales.

77.     Party City's subsidiary, Anagram, was sold in the bankruptcy case to Celebrate Bidco, LLC, a group of its pre-bankruptcy investors.

78.     Anagram continues to sell foil balloons to Party City.  Anagram is the world's largest manufacturer of foil balloons.

79.     By its own account, Party City is "the world's largest designer, manufacturer and distributor of [P]arty [G]oods." *See* Party City's presentation at the Goldman Sachs Retail Conference dated September 2017 (Page 5), attached hereto as Exhibit "5."

80.     By its own account, Party City is the industry leader in "Party Goods" with no number two player in the market:



(Ex. 5, Page 3).

81.     Party City has a "unique vertical model" that "sets [it] apart from other retailers" in that it controls the market for the design, manufacture, wholesale and resale of Party Goods.  (*See* Ex. 5, Page 4).

## II.     Party City uses its vertical structure and market power anticompetitively.

82.     Party City's "unique vertical model" is anticompetitive and Party City uses it to drive its competitors, including its own Franchisees, out of business and to "jack up prices" on Party Goods at the wholesale and retail levels.

83.     By its own admission, Party City's unique vertical structure creates "several unique barriers to entry" into the Party Goods market by competitors. (*See* Ex. 5, Page 4).

84.     Party City uses its "unique barriers to entry" anticompetitively to drive down competition, control and damage franchises, and inflate wholesale and retail prices.

85.     Party City admits that it uses its unique vertical structure to unfairly compete with its *own* customers and franchisees who are also Party City competitors.

86.     Party City has stated that "[o]ur business has several unique barriers to entry," including that "***many of our retail competitors are our wholesale customers because we are the leading supplier.***" (Ex. 5, Page 8).

87.     By its own admission, Party City's "unique vertical model creates a "Virtuous Circle of Strength" by controlling the manufacturing, wholesale, and retail of Party Goods. (Ex.5, Page 9).

88.     Party City's "ability to drive vertical integration provides unique competitive advantages" over any competitors seeking to enter the market. (Ex. 5, Page 19).

89.     Through its use of unfair competition, bad faith business practices, illegal pricing fixing, and illegal price discrimination, Party City operates as a monopolist in the Party Goods market.

90.     Through a series of anticompetitive acquisitions, Party City acquired all material competitors in the Party Goods market and by its own admission **has no comparative competitor in retail sales of Party Goods.**

## III.     Party City abandons the franchise model.

91.     Party City earns a **double** margin on the Party Goods that it wholesales and resales and earns a **triple** margin on the Party Goods that it manufacturers, wholesales and retails. (*See* Ex. 5, Page 10).

92.     Party City has acknowledged that it makes less retail profit on retail sales from franchise stores than it does from company owned stores.



(Ex. 5, Page 10).

93.     Party City has acknowledged it its SEC filings that it is no longer seeking franchisees in the United States. (*See* Exhibit 6, Form 10-K filed March 28, 2024, Page 12).

94.     Party City makes a triple profit margin on its corporate stores because it makes a margin at the manufacturing, wholesale, and retail level. But, Party City only makes a double margin on its franchise stores.

95.     Party City's company-owned stores generate greater returns for Party City than Party City would receive on fees and royalties from franchised outlets.

96.     As a result, Party City has abandoned the franchise model for its retail stores in the United States and seeks to do away with the existing franchises that it had previously granted.

97.      "The number of franchisee stores have declined in recent years due in large part to strategic acquisitions of franchisee stores." (Ex. 6, Page 12).

98.     In addition, Party City prefers company-owned retail stores and seeks to eliminate franchise stores because Party City is better able to control company-owned stores.

**IV.    Post-bankruptcy Party City employs illegal tactics to force its franchisees to forfeit their retail stores.**

99.     Since emerging from bankruptcy, Party City has engaged in a conspiracy consisting of intentional conduct calculated to make it impossible for its franchisees to survive and force them to forfeit their stores to Party City for zero payment in return for the franchisees' interest and equity in the stores.

100.    Party City is a horizontal competitor with its own franchise stores, including the San Antonio Franchisees.

101.    Party City controls the supply and sourcing of merchandise to Party City franchise stores.

102.    Party City controls the pricing of merchandise at Party City franchise stores.

103.    By controlling the both the cost of goods sold and the retail price of the Party Goods sold, Party City directly controls the profitability of the franchise stores.

104.    Party City has made a concerted, bad faith effort to eliminate its franchise stores by forcing the franchisees out of business through a variety of unlawful tactics, including forcing them to purchase all or substantially all merchandise from Amscan and other Party City-controlled vendors at commercially unreasonable wholesale prices and terms. These terms and price are intentionally anticompetitive and specifically intended to cause the franchisees to operate at a loss, forcing them to sell their franchise stores.

105.    Plaintiffs are franchisees of Party City, and in some cases have been so for over thirty-four (34) years.

106.    On July 16, 2024, Party City-owned Amscan issued new terms of sale to Party City franchisees, requiring them to pay cash for store merchandise and otherwise modifying payment terms. Attached as Exhibit "7" is the July 16, 2024 Letter from John Capela.

107.    Now, franchisees, including the San Antonio Franchisees, are forced to restructure the way they finance their stores, while simultaneously receiving demands from Party City stating that they are in default of their franchise agreements because of outstanding amounts due to Amscan.

108.    On July 17, 2024, PCHI sent a letter to Plaintiffs, which is attached as Exhibit "8." In this letter, PCHI informs Plaintiffs that they are in default of the San Antonio Franchise Agreements by, among other things, "fail[ing] to pay when due amounts owed to PCC." (Ex. 9, Page 1). PCHI states that Plaintiffs owe $24,820.68 to Party City Corporation and $248,011.38 to Amscan. (Ex. 9, Page 2).

109.    A major contributing factor to the amounts due to Amscan is the sudden change in payment terms, requiring the San Antonio Franchisees to pay Amscan in cash, as opposed to utilizing credit as the San Antonio Franchisees were able to do previously.

110.    Only **one day** elapsed between the date of the letter with new payment terms and the date of the default letter.

111.    On August 2, 2024, Plaintiffs were informed by PCHI that they owe a collective $400,749.96 as "not current" to Amscan. In that same communication, Plaintiffs were not showing as behind on payments to "Party City Retail."

112.    Still, because Plaintiffs are "not current" with Party City-affiliate Amscan (who recently changed its payment terms), Plaintiffs were informed by PCHI that PCHI would not be

able to ship any product to Plaintiffs until the $400,749.96 "not current" amount is paid. Of course, because this amount is owed to Amscan, it must be paid by ACH or cash payment.

113.    The San Antonio Franchisees are now required to completely restructure the way they finance their stores, but have been defaulted and cut off from shipments before they have had the opportunity to do so.

114.    Party City generally allows customers to place preorders for high-end Halloween props through the San Antonio Franchisees' stores. Customers would place these orders online and pick up in store.

115.    As of mid-August 2024, the San Antonio Franchisees had approximately 111 of such prepaid Halloween orders that would generate approximately $24,000.00 in sales to their stores. However, Party City will not ship these items or any of the San Antonio Franchisees' Halloween inventory, so the San Antonio Franchisees are unable to fulfill these orders.

116.    The San Antonio Franchisees have now been cut off from inventory shipments by PCHI before their busiest retail season of the year, thereby foreclosing their best chance at becoming current and curing their default.

**V.      Party City engages in unlawful price fixing and price discrimination to damage its franchisees.**

117.    Party City and its wholly-owned subsidiary Amscan employ unlawful price discrimination and price fixing to charge higher prices for wholesale Party Goods to Party City franchisees than they charge to Party City corporate stores.

118.    Party City and its wholly-owned subsidiary Amscan employ unlawful price discrimination and price fixing to charge higher prices for wholesale Party Goods to Party City franchisees than they charge to third-party retailers who compete with Party City franchisees.

**VI.     Party City engages in unlawful discrimination in the terms of sale of Party Goods intended to damage its franchisees.**

119.    In furtherance of and to expedite their unlawful scheme, as mentioned previously, on July 16, 2024, Party City-owned Amscan issued new terms of sale to Party City franchisees, requiring them to pay cash for store merchandise and otherwise modifying payment terms. (Ex. 8).

120.    Only one day before, on July 15, 2024, Party City-owned Amscan issued more favorable terms to third party purchasers who are not Party City franchisees.  Attached as Exhibit "9" is the July 15, 2024 Letter from Tom Micsky.

**VII.    Party City employs unlawful tying agreements to require franchisees to purchase unlicensed Party Goods in order to purchase Licensed Party Goods**

121.    "Licensed Party Goods" are Party Goods that feature the branding, images or characters from popular licensed property such as movies, television shows, cartoons, or sports teams.

122.    These Party Goods are officially authorized by the owners of the intellectual property rights.  They feature the licensed characters on items such as party decorations, tableware, balloons, party favors, and costumes.

123.    Party City monopolizes the Licensed Party Good market.

124.    Party City holds licenses from Disney, Mattel, Nick, Warner Brothers, Marvel, Sesame Street, NFL, NBA, NHL, NBA and others.

## YOU MAY NOT KNOW:
### Our business has several unique barriers to entry

| Portfolio of Top Tier Licenses | Difficult Category for Online Retailers to Steal Market Share | We are Entrenched in the Party Goods Industry |





| Unmatched Product Breadth | Innovative Product with our 130-Person In-House Design Team | 85% Unaided Brand Awareness |





(Ex. 5, Page 8).

125.    Sales of Licensed Party Goods drive sales in the Party Goods market.

126.    "Unlicensed Party Goods" are Party Goods that do not have official authorization or permission from owners of intellectual property rights. They include Party Goods without likenesses and artwork from popular characters, such as colored decorations, tableware, balloons, party favors and costumes.

127.    Party City requires its franchisees to purchase Unlicensed Party Good from Party City in order to purchase Licensed Party Goods.

128.    Party City uses multiple devices to enforce these tying agreements, including Party City's power over franchisees pursuant to the franchise agreements, their controlling market share over Party Goods, their  monopoly power over Licensed Party Goods, their ability to control and monitor wholesale terms to franchisees, their ability to control and monitor retail prices charged by Franchisees, their leverage over franchisees by virtue of the significant investment franchisees

have in their stores and in the Party City brand, and their ability to compete directly with their own franchisees.

129.    Party City uses these tying agreements in an anticompetitive manner to charge higher-than-market prices to franchisees for Unlicensed and Licensed Party Goods.

130.    Since its bankruptcy filing, Party City has used these tying agreements to attempt to force its franchisees out of business and to force its franchisees to forfeit their businesses and retail stores to Party City.

**VIII.    Party City conspires with Anagram to fix prices, engage in anticompetitive price discrimination against Party City franchisees on pricing of foil balloons, and utilize illegal tying agreements for access to foil balloons.**

131.    Foil balloons are a type of balloon made from a thin metallic foil. Unlike traditional rubber or latex balloons, foil balloons are made from polyester film coated with aluminum that gives them a shiny reflective appearance. Foil balloons are more durable and long lasting than traditional balloons—they are designed to be filled with helium and can stay inflated for several days.

132.    Unlike traditional balloons, foil balloons come in various shapes, from simply round or equate to elaborate shapes like animals, characters, letters, and numbers. Unlike traditional balloons they can display characters, messages, and images. Hereafter these balloons are referred to as "Foil Balloons"

133.    "Licensed Foil Balloons" are Foil Balloons with licensed characters or logos, such as popular cartoon characters, superheroes, sports teams, and movie franchises ("Licensed Foil Balloons").

134.    Prior to the Party City bankruptcy, Anagram was a Party City-owned company.

135.    Anagram is the world's largest producer of Foil Balloons.

136.     Anagram controls more than 60% of the global market share of all Foil Balloons.

137.     Anagram monopolizes the Licensed Foil Balloon market in the United States.



(Ex. 5, Page 7).

138.     Anagram was sold in the Party City bankruptcy in 2023 to a group of its own investors, who were and are also Party City investors.

139.     Anagram continues to be controlled by investors with an interest in Party City.

140.     Anagram continues to supply Party City with Foil Balloons and to interact closely with Party City at the investor, management, and operational levels.

141.     Party City conspires with Anagram to fix prices on Foil Balloons and force Party City franchisees to purchase Foil Balloons from Anagram through Party City-owned Amscan.

142.     Party City conspires with Anagram to force unlawful tying agreements on Party City franchisees.

143.     Party City and Anagram require franchisees to purchase Unlicensed Foil Balloons and other products in order to purchase Anagram's sought-after Licensed Foil Balloons.

144.    Utilizing their market share and monopolist powers, and Party City's control over its franchisees, Party City and Anagram have forced and continue to force Party City franchisees to purchase Foil Balloons at nearly double the wholesale price the same Foil Balloons could be purchased from unaffiliated third-party suppliers.

145.    Party City conspires with Anagram to engage in unlawful, anticompetitive price discrimination targeting Party City franchisees.

146.    Party City and Anagram sell Foil Balloons and Licensed Foil Balloons to third parties at lower prices than Party City franchisees are required to purchase them from Anagram under the franchise agreements.

147.    The anticompetitive purpose of the price discrimination is to render the franchisees' businesses unprofitable and cause them to be unable to operate.

148.    The further anticompetitive purpose of the price discrimination is to put the franchisees in a position where they are forced to forfeit their stores, investments, equity, and goodwill to Party City.

## IX.    Party City breached the San Antonio Franchise Agreements willfully and in bad faith.

149.    Party City's corporate-owned stores are horizontal competitors of the franchise stores.

150.    The San Antonio Franchise Agreements are form agreements prepared entirely by Party City with no possibility of negotiation with respect to the terms and were presented to the franchisees on a "take it or leave it" basis. Thus, they are contracts of adhesion.

151.    In reliance upon their long-standing business relationships and franchise agreements, over the years Plaintiffs have made substantial investments in and improvements to their Party City stores, promoting Party City's trademarks and goodwill. Plaintiffs have invested

in the businesses they owned with the expectation of being able to continue to operate those stores in good faith partnership with Party City.

152.    Party City has exercised and continues to exercise unilateral control over nearly all material aspects of the franchisees' businesses in a manner that severely impacts Plaintiffs' ability to operate their franchise stores in a reasonably commercial manner.

153.    At all times relevant to this action, Party City has utilized its ability to control the wholesale market of Party Goods so as to manipulate the price, availability, and delivery of Party Goods to Plaintiffs and ultimately to the consumer.

154.    In breach of the San Antonio Franchise Agreements, Party City has exercised that control to deprive Plaintiffs of the benefit of their franchise agreements and render Plaintiffs so unprofitable that they will no longer be able to operate.

155.    In breach of the San Antonio Franchise Agreements, Party City has operated company-owned stores that deliver product within the franchise territory of Plaintiffs, competing against Plaintiffs in their territory and failing and refusing to pay royalties to the franchisees for sales within their own territory.

156.    In breach of the San Antonio Franchise Agreements and other applicable laws as set forth herein, Party City has required Plaintiffs to purchase eighty (80) percent of the merchandise for their stores from Amscan, a supplier wholly-owned and controlled by Party City.

157.    In breach of the San Antonio Franchise Agreements and other applicable laws, as set forth herein, Party City charges Plaintiffs commercially unreasonable prices for the Amscan merchandise.

158.    In breach of the San Antonio Franchise Agreements and other applicable laws, as set forth herein, Party City has defaulted the San Antonio Franchisees based on their debt to Amscan after a sudden change in payment terms.

159.    In breach of the San Antonio Franchise Agreements and other applicable laws, Party City sets and fixes the prices Plaintiffs must charge for merchandise sold in the franchise stores.

160.    In breach of the San Antonio Franchise Agreements and other applicable laws as set forth herein, Party City dictates wholesale prices that Plaintiffs must pay and the retail prices that Plaintiffs must charge in such a way that they could only lose money by operating.

161.    The Party Goods business is highly impacted by seasonal and holiday sales. Timely delivery of seasonal goods is critical to profitability of the franchise stores.

162.    Party City has manipulated the timing of the availability and delivery of seasonal Party Goods from its mandated Party City-owned supplier to intentionally cause harm to Plaintiffs.

163.    Party City makes seasonal Party Goods available in its corporate-owned stores and web-based stores in a timely manner and delays or interferes with the availability of the same goods to Plaintiffs.

164.    In further breach of the San Antonio Franchise Agreements, Party City, once it brings its franchisees to the brink of bankruptcy, refuses to agree to the sale of the franchise stores and improperly and in breach of the franchise agreements, threatens to charge the Controlling Principals with years of royalties on their franchise stores if they either sell the stores or file for bankruptcy when they can no longer afford to buy inventory or make payroll as a result of Party City's conduct.

165.    Using unlawful price discrimination, anticompetitive price fixing, bad faith breach of the San Antonio Franchise Agreements, and other unlawful tactics, Party City and its co-conspirators have intentionally sought to run Party City franchisees out of business and force them to forfeit their stores and the businesses they have built up over many years of dedicated work to Party City for zero dollars.

166.    Once Party City's franchisees are forced into a position where they must sell their stores to curb the extensive losses they have incurred because of Party City's conspiratorial and unlawful conduct, Party City refuses to allow the franchisees to sell to third parties for any value, much less the actual value of the franchise stores if they were allowed to operate absent Party City's price fixing, price discrimination, unfair competition, and other wrongful conduct.

167.    Party City's conduct, as described above, is consistent with an intent to force its franchisees out of business and further force its franchisees to forfeit their businesses, including their many years of investment, equity, goodwill, lifetimes of dedication, and other interests to the Party City.

## <u>COUNT ONE</u>
### Breach of Contract – Franchise Agreements
### (Defendant Party City Corporation)

168.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 above as if set forth fully herein.

169.    The San Antonio Franchise Agreements are valid, enforceable contracts.

170.    Defendant Party City Corporation breached the contracts by engaging in the conduct described above and thereby rendering Plaintiffs in default of the contracts.

171.    As a result of Party City Corporation's breach of the San Antonio Franchise Agreements, Plaintiffs have and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Party City Corporation as follows:

(a) Damages in an amount to be determined at trial, in excess of $75,000 exclusive of interest and costs;

(b) Attorneys' fees and costs; and

(c) Such further relief as the Court deems just and appropriate.

**COUNT TWO**
**Breach of Duty of Good Faith and Fair Dealing**
**(Defendant Party City Corporation)**

172. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 above as if set forth fully herein.

173. Party City Corporation's conduct has been in bad faith and derogation of the implied covenant of good faith and fair dealing implied in every contract.

174. As a result of Party City Corporation's breach of the duty of good faith and fair dealing, Plaintiffs have and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Party City Corporation as follows:

(a) Damages in an amount to be determined at trial, in excess of $75,000 exclusive of interest and costs;

(b) Attorneys' fees and costs; and

(c) Such further relief as the Court deems just and appropriate.

**COUNT THREE**
**Robinson-Patman Act**
**(Party City Corporation and Amscan)**

175. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 above as if set forth fully herein.

176.    Party City Corporation and Amscan have engaged in the sale of a commodity to Plaintiffs and other Party City franchisees in interstate commerce.

177.    The relevant product market is the Party Goods market to Plaintiffs, other Party City Franchisees, and other third-party purchasers.

178.    Through their manipulation of the Party Goods market, Amscan and Party City Corporation have charged vastly different and disparate prices for Party Goods without reason or justification.

179.    Amscan and Party City Corporation's sale of Party Goods at different prices, but of the same grade and quality, have been made to two or more purchasers.

180.    Amscan and Party City Corporation's price discrimination scheme has substantially interfered with competition in the geographic market as defined in the San Antonio Franchise Agreements.

181.    Amscan and Party City Corporation's discriminatory conduct substantially diminishes competition and prohibits Plaintiffs from maintaining or increasing their margins in the sale of Party Goods, which conduct substantially injures, destroys, or prevents competition.

182.    As a result of the foregoing conduct, Amscan and Party City Corporation have violated the Robinson-Patman Act and have engaged in unlawful price discrimination contrary to 15 U.S.C. § 13(a).

**WHEREFORE**, Plaintiffs demand judgment against Amscan and Party City Corporation as follows:

(a)    Treble damages under 15 U.S.C. § 15;

(b)    Compensatory and consequential damages;

(c)    Interest;

(d)     Attorneys' fees and costs under 15 U.S.C. § 15; and

(e)     For other such relief as the Court may deem just and equitable.

## COUNT FOUR
### Tying Arrangements in Restraint of Trade in Violation of 15 U.S.C. § 1
### (Party City Corporation and Anagram)

183.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 above as if set forth fully herein.

184.    The acts and practices of Party City Corporation and Anagram regarding Licensed Foil Balloons constitute unlawful tying arrangements, each of which is an unreasonable restraint on trade and commerce among multiple states in violation of 15 U.S.C. § 1.

185.    The tying or leverage product in the tying arrangement is Licensed Foil Balloons. Anagram has monopoly power in the market of Licensed Foil Balloons. The tied product in this unlawful tying arrangement is Unlicensed Foil Balloons and other Party Goods.

186.    Under the San Antonio Franchise Agreements, Party City Corporation requires Plaintiffs to purchase Unlicensed Foil Balloons and other Party Goods that Plaintiffs either do not want or would prefer to purchase from other suppliers or under different terms.

187.    More than an insubstantial amount of commerce in the tied products is affected by the tying arrangement.

188.    Party City Corporation and Anagram have economic interests in the anticompetitive effects of the tie.

**WHEREFORE**, Plaintiffs demand judgment against Anagram and Party City Corporation as follows:

(a)     Treble damages under 15 U.S.C. § 15;

(b)     Compensatory and consequential damages;

(c)     Interest;

(d)     Attorneys' fees and costs under 15 U.S.C. § 15; and

(e)     For other such relief as the Court may deem just and equitable.

## COUNT FIVE
### Tortious Interference with Contract
### (Defendant Amscan)

189.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 above as if set forth fully herein.

190.     Plaintiffs have valid and enforceable contracts with Party City Corporation (the San Antonio Franchise Agreements).

191.     Amscan has intentionally interfered with Plaintiffs' ability to fulfill their obligations under the San Antonio Franchise Agreements by changing their payment terms.

192.     As a result, Plaintiffs have and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Amscan as follows:

(a)     Damages in an amount to be determined at trial, in excess of $75,000 exclusive of interest and costs;

(b)     Attorneys' fees and costs; and

(c)     Such further relief as the Court deems just and appropriate.

## COUNT SIX
### Tortious Interference with Business Relations
### (PCHI, XYZ Corporations 1 through 5)

193.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 above as if set forth fully herein.

194.     PCHI and the Fictitious Defendants, XYZ Corporations 1 through 5, have intentionally and wrongfully interfered with the San Antonio Franchise Agreements by causing

Party City Corporation to move away from the franchise model and, as a means to that end, seeking to run Plaintiffs out of business.

195.    As a result, Plaintiffs have and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against PCHI and XYZ Corporations 1 through 5 as follows:

(a)    Damages in an amount to be determined at trial, in excess of $75,000 exclusive of interest and costs;

(b)    Attorneys' fees and costs; and

(c)    Such further relief as the Court deems just and appropriate.

**COUNT SEVEN**
**Civil Conspiracy**
**(All Defendants)**

196.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 157 above as if set forth fully herein.

197.    Defendants agreed to join in a conspiracy related to their unlawful actions, including, but not limited to, the illegal tying arrangements, unlawful price discrimination, interference with the San Antonio Franchise Agreements, and the actions taken to drive Plaintiffs out of business.

198.    Defendants had a meeting of the minds on the object of or course of this conspiracy. Defendants knew and agreed upon the unlawful object or course of action and purpose for this conspiracy.

199.    Defendants knew that their wrongful actions would inflict injury upon the targets of the conspiracy, including Plaintiffs.

200.    Defendants committed multiple unlawful and overt acts to further the object or course of action for this conspiracy.

201.    As a result, Plaintiffs have suffered and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Party City Corporation as follows:

(a)    Damages in an amount to be determined at trial, in excess of $75,000 exclusive of interest and costs;

(b)    Attorneys' fees and costs; and

(c)    Such further relief as the Court deems just and appropriate.

Respectfully submitted,

THIS, 19th day of August, 2024.

Respectfully Submitted,

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Eric J. Monzo (NJ Bar No. 025942002)
Siena B. Cerra (NJ Bar No. 442082023)
Ryan E. Carreon (*Pro Hac Vice* forthcoming)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail: emonzo@morrisjames.com
E-mail: scerra@morrisjames.com
E-mail: rcarreon@morrisjames.com

Cheri T. Gatlin (*Pro Hac Vice* forthcoming)
Natalie A. Cosmich (*Pro Hac Vice* forthcoming)
Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
E-mail: cgatlin@burr.com
E-mail: ncosmich@burr.com

*Attorney for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs Dojo Enterprises, Inc., SWM Party Company, LLC, Culebra Party Company, LLC, DJMJ Enterprises, Inc., and Don E. Lasseter, Jr. hereby demand a jury trial in the above matter.

Respectfully submitted,

THIS, 19th day of August, 2024.

Respectfully Submitted,

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Eric J. Monzo (NJ Bar No. 025942002)
Siena B. Cerra (NJ Bar No. 442082023)
Ryan E. Carreon (*Pro Hac Vice* forthcoming)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail: emonzo@morrisjames.com
E-mail: scerra@morrisjames.com
E-mail: rcarreon@morrisjames.com

Cheri T. Gatlin (*Pro Hac Vice* forthcoming)
Natalie A. Cosmich (*Pro Hac Vice* forthcoming)
Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
E-mail: cgatlin@burr.com
E-mail: ncosmich@burr.com

*Attorney for Plaintiffs*